PADUANO & WEINTRAUB LLP
Anthony Paduano (AP 8400)
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
Telephone: (212) 785-9100
Facsimile: (212) 785-9099
ap@pwlawyers.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                              :
CREDIT SUISSE SECURITIES (USA) LLC,
                              :
            Petitioner,       :    No. 07-CV-08556 (JGK)
                              :
     -against-                :
                              :
JOHN L. SULLIVAN II,          :
                              :
            Respondent.
------------------------------x

## AFFIRMATION OF ANTHONY PADUANO

ANTHONY PADUANO, under penalty of perjury, affirms as follows:

1. I am admitted to practice law before the courts of the State of New York, and before this Court, and am a member of the firm Paduano & Weintraub LLP, counsel for respondent John L. Sullivan, II ("Respondent" or "Sullivan") in this proceeding. I submit this Affirmation in opposition to the motion of Credit Suisse Securities (USA) LLC ("Credit Suisse") for injunctive relief against Respondent preventing him from continuing to provide financial services to his customers.

2. Pursuant to the Financial Industry Regulatory Authority ("FINRA")'s Code of Arbitration Procedure for Industry Disputes Section 13200 (Exhibit 1 hereto), a dispute must be arbitrated before FINRA if the dispute arises out of the business

1

activities of a member firm and an associated person.

    3.    Pursuant to FINRA's Code of Arbitration Procedure for Industry Disputes Section 13804 (<u>Exhibit 2</u> hereto), a party may seek interim injunctive relief from a court. However, if interim injunctive relief is sought from the court, Section 13804 requires that a statement of claim be filed simultaneously with FINRA.

    4.    For the convenience of the Court, annexed hereto as <u>Exhibits 3 & 4</u> are FINRA Uniform Practice Rule 11870 and NYSE Rule 412 (which FINRA has incorporated in Incorporated NYSE Rules), which recognize that a customer is always free to direct a brokerage firm to transfer his or her account and related records to another firm. Section 11870(a) of the FINRA Uniform Practice Code requires that, when a customer of one FINRA member firm (the "carrying member") "wishes to transfer securities account assets, in whole or in specifically designated part, to another member (the "receiving member") and gives authorized instructions to the receiving member, <u>both members must expedite and coordinate activities with respect to the transfer.</u>" (Emphasis added). Further, Section 11870(b)(1) states that upon receipt of written transfer instructions from a customer, "the receiving member <u>must</u> immediately submit such instructions to the carrying member." (Emphasis added). In the absence of one of the enumerated exceptions -- none of which apply here -- the carrying member (Credit Suisse) "<u>must</u> transfer the securities positions and/or money balance reflected on its books for the account." (Emphasis added). These rules absolutely bind member firms.

    5.    The rules that prohibit any member firm from taking any action that interferes with a customer's right to transfer his or her account were previously

2

reaffirmed by the NASD.  See Exhibit 5 (NASD Notice to Members 02-07).  Rule IM 2110-7, which became effective on December 21, 2001 when it was filed with the Securities and Exchange Commission, reads as follows:

> It shall be inconsistent with just and equitable principles of trade for a member or person associated with a member to interfere with a customer's ability to transfer his or her account in connection with the change in employment of the customer's registered representative, provided that the account is not subject to any lien for monies owed by the customer or other bona fide claim. Prohibited interference includes, but is not limited to, seeking a judicial order or decree that would bar or restrict the submission, delivery or acceptance of a written request from a customer to transfer his or her account. Nothing in this interpretation shall affect the operation of Rule 11870. (Exhibit 5)

6. In the press release issued on December 26, 2001 regarding the adoption of the rule, the former President and CEO of the NASD made the following statement:

> It is a fundamental right of an investor to choose with whom he or she does business, and the fact that a broker changes firms should not affect an investor's ability to continue to access his or her account and to do business with that broker. (Exhibit 6)

7. In the original Notice to Members 01-36 seeking comment on the proposed rule, the NASD identified the policy reasons behind promulgating this rule, emphasizing that there is a strong public interest in allowing customers to have the right to choose the firms and registered representatives that service their accounts:

> NASD Regulation believes that, as a matter of policy, customers should have the freedom to choose the registered representatives and firms that service their brokerage accounts. NASD Regulation also is concerned that customers whose account transfer requests have been delayed in this manner could be deprived of brokerage services and access to their accounts while their registered representative and his or her former firm attempt to resolve an employment dispute. (Exhibit 7)

8. While this rule does not prohibit member firms (such as Credit Suisse) from suing their former financial advisors, it unequivocally requires such firms to honor a customer's request -- including those serviced by Sullivan -- to transfer his or her accounts. Moreover, it affirms the NASD's and now FINRA's serious concerns regarding the harm that can befall customers when the transfer of their accounts is delayed due to disputes such as the instant one.

9. Consistent with FINRA's rule, on November 19, 2001 the North American Securities Administrators Association ("NASAA") issued a statement opposing any action by financial services firms that would interfere with a customer's right to do business with the financial advisor and/or firm of his or her choice. A copy of the statement is annexed hereto as <u>Exhibit 8</u>. The NASAA stated its position as follows:

> State securities regulators believe, as a matter of public policy, that customers should have both the freedom to choose their brokers and full and free access to their accounts. Firms are free to litigate their employment contracts, but customer accounts should not be held hostage during the dispute. <u>Customers should not be exposed to the risk of losses or lost opportunities as a result of competition among firms. Customers are not parties to the litigation and have no opportunity to defend their interests</u>. (Exhibit 8) (emphasis added)

10. Annexed hereto as <u>Exhibit 9</u> is a copy of an Agreement to Use Employee Dispute Resolution Program Procedures purportedly signed by Sullivan, and dated August 9, 2001, provided to me by Credit Suisse. We have never seen, nor has Mr. Sullivan, the document referenced therein which is labeled "Statement of Policy Regarding the Credit Suisse First Boston Employment Dispute Resolution Program" that

is acknowledged to be binding.

11. Annexed hereto as <u>Exhibit 10</u> is a copy of Credit Suisse's Employment Dispute Resolution Program, dated October 9, 2002, provided to me by Credit Suisse, to which Mr. Sullivan has never subscribed or agreed.

12. Annexed hereto as <u>Exhibit 11</u> are true and accurate copies of papers filed by Credit Suisse in the United States District Court for the Northern District of California in an action captioned <u>Credit Suisse First Boston Corporation v. Grunwald</u>, Case No. C02-2051 SBA (N.D.Cal. 2002) in support of its motion for a preliminary injunction in that case.

13. Annexed hereto as <u>Exhibits 12 and 13</u>, respectively, are true and accurate copies of letters that I sent to JAMS, The Resolution Experts, on October 10, 2007 and October 16, 2007. As indicated by those letters, counsel for Credit Suisse has never provided to me any document signed by Mr. Sullivan that requires either or both of a mediation or arbitration before JAMS in New York City concerning the dispute between Credit Suisse and Mr. Sullivan.

14. On October 15, 2007, at approximately 8:00 p.m., I had a telephone conversation with Alexander C.B. Bernard, Esq., Director and Counsel for Credit Suisse, in which he stated that I could retain for "litigation purposes" copies of all of the supposedly confidential materials removed by Mr. Sullivan from the offices of Credit Suisse. Clearly, if such documents were truly confidential and proprietary, as alleged by Credit Suisse, Mr. Bernard would not have made such an offer.

Wherefore, Respondent respectfully requests that this Court deny Credit Suisse all of the injunctive relief that it seeks and compel the parties to arbitrate this dispute before FINRA.

_____
Anthony Raduano

October 17, 2007