1  MICHAEL J. LAWSON (State Bar No. 66547)
   MICHAEL D. EARLY (State Bar No. 111459)
2  SUZY C. KASTER (State Bar No. 185912)
   STEEFEL, LEVITT & WEISS
3  A Professional Corporation
   One Embarcadero Center, 30th Floor
4  San Francisco, California 94111
   Telephone:    (415) 788-0900
5  Facsimile:    (415) 788-2019

6  Attorneys for Plaintiff
   CREDIT SUISSE FIRST BOSTON CORPORATION
7

FILED
2002 MAY -1 PM 3:18
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8                UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11  CREDIT SUISSE FIRST BOSTON            CASE NO. C02-2051 SBA
    CORPORATION, a Massachusetts
12  corporation,                          **CREDIT SUISSE FIRST BOSTON
                                          CORPORATION'S SUPPLEMENTAL
13            Plaintiff,                  MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
14      v.                                MOTION FOR PRELIMINARY
                                          INJUNCTION**
15  MICHAEL GRUNWALD, a California
    resident,                             Date:  May 14, 2002
16                                        Time:  1:00 p.m.
              Defendant.                  Dept:  The Honorable Sandra B. Armstrong
17

18              I.    **INTRODUCTION**

19          Pursuant to the Stipulation of the parties and the Order of this Court converting the

20  *ex parte* application for temporary restraining order and order to show cause re preliminary

21  injunction of plaintiff Credit Suisse First Boston Corporation ("CSFB") into a motion for

22  preliminary injunction, CSFB submits the following supplemental memorandum of points and

23  authorities in support of its motion.  CSFB seeks by this motion to compel defendant Michael

24  Grunwald ("Grunwald" or "Defendant") to file claims related to the termination of his

25  employment with CSFB in their proper forum before an NASD arbitration panel.  Defendant has

26  improperly filed his claims against CSFB in the American Arbitration Association ("AAA")

27  despite Defendant's contractual and regulatory obligations to arbitrate his claims before the

28  NASD.

CSFB's SUPP. MEMO. OF POINTS AND AUTHORITIES RE PRELIMINARY INJUNCTION
15621:6300371.1                                                              1

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111
Telephone: 415/788-0900 / Facsimile: 415/788-2019

1    Defendant apparently contends that he is not obligated to file his claims in the

2   NASD as a result of CSFB's own internal Employment Dispute Resolution Program applicable to

3   all CSFB employees.  Defendant is sadly mistaken in this contention.  CSFB's Employment

4   Dispute Resolution Program specifically provides that registered employees such as Defendant

5   Grunwald must comply with the mandatory arbitration provisions of the NASD as to any

6   employment-related claims which are subject to mandatory NASD arbitration.  This rule was set

7   forth when CSFB's Employment Dispute Resolution Program was initiated in December 1997,

8   and has been reiterated in subsequent pronouncements distributed to CSFB employees in January

9   of 1998 and February of this year.  Grunwald's argument that CSFB's internal policy authorizes

10   him to file claims in the AAA which are otherwise subject to mandatory NASD arbitration is at

11   best ill advised, and at worse made in bad faith.

12    This Court should therefore enjoin Defendant from proceeding in the AAA until

13   an NASD panel, which will be constituted within fifteen (15) days of issuance of an injunctive

14   order by this Court, can enter a permanent injunction and compel Grunwald to pursue his claims

15   in NASD arbitration.

16    ## II.  FACTS

17    CSFB's Employment Dispute Resolution Program (the "Program") was first

18   announced to CSFB's employees through a memorandum dated December 1, 1997.  The

19   memorandum enclosed a description of the Program and an explanatory memorandum of

20   anticipated questions and answers regarding the Program.  *See* Declaration of Elizabeth W.

21   Millard in Support of Credit Suisse First Boston Corporation's Motion for Preliminary Injunction

22   ("Millard Declaration"), filed herewith, ¶ 2, Exhibit A.

23    The Program itself makes clear that it is not intended to and does not in fact affect

24   the mandatory arbitration rules of the NASD or any other stock exchange.

25    If a registered representative is subject to a legal requirement that
26    he or she arbitrate Employment-Related Claims pursuant to
     particular rules or in a particular forum (for example, at or pursuant
27    to the rules of a stock exchange), to the exclusion of other forums
     and rules, that requirement will prevail over the arbitration
28    procedures describes herein.  Registered representatives will,

1    however, in any event be subject to the Program requirements
     regarding the internal grievance procedure and mediation... .
2
     Millard Declaration, Exhibit A, p. 4 (p. 2 of the Program).
3
4          In the question and answer section of the memorandum, the issue of NASD

5    arbitration of the claims of registered representatives is also directly addressed. In response to the

6    question as to whether the program applies "to an employee who is subject to mandatory

7    arbitration before the [NASD]?", the response is unequivocal that the requirements of mandatory

8    NASD arbitration apply to registered representatives to the extent the claims presented are subject

9    to mandatory NASD arbitration.

10         Currently, registered representatives are required to agree, in their
           Forms U-4, that they will arbitrate all of their employment-related
11         disputes before the NASD or a stock exchange, pursuant to its rules.
           This U-4 requirement will take precedence over the arbitration
12         provisions of the Program for so long as it remains in effect.
           Registered representatives will, however, be subject to all the other
13         provisions of the Program, including those requiring an employee
           to make an effort to resolve a dispute through Steps One and Two
14         of the Program before proceeding to arbitration and those setting
           forth the procedures for Steps One and Two.
15
           The NASD has proposed amending its rules to exclude statutory
16         discrimination claims from the U-4 requirement. This change . . . is
           expected to take place, probably sometime during 1998. At such
17         time as the arbitration of all or certain employment-related claims at
           the NASD or one of the exchanges is no longer required under the
18         rules of the NASD or such exchange, registered representatives will
           be required to pursue all their employment-related claims in
19         accordance with the Program, including its arbitration provisions.

20   Millard Declaration, Ex. A, Question 4.

21         Ultimately, the NASD rule change which was referenced in the question and

22   answer section was in fact promulgated by the NASD. That NASD rule change excluded from

23   NASD arbitration statutory discrimination claims. In light of that exclusion, a memorandum was

24   sent to all registered employees of CSFB on January 19, 1999 regarding the effect of the NASD

25   rule change. *See* Millard Declaration, ¶ 3, Exhibit B.

26         In short, the January 19, 1999 memorandum stated that, since the NASD no longer

27   required arbitration of statutory discrimination claims, those claims would now be subject to all

28   aspects of CSFB's Program, including mandatory arbitration under one of the three independent

CSFB's SUPP. MEMO. OF POINTS AND AUTHORITIES RE PRELIMINARY INJUNCTION
15621:6300371.1                                                                                3

STEEFEL LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111
Telephone: 415/788-0900 · Facsimile: 415/788-2019

1   service providers set forth in the Program. The memorandum again made clear, however, that all

2   other employment-related claims which are subject to mandatory NASD arbitration would still be

3   subject to mandatory NASD arbitration under the Program.

> The Program provides for arbitrations thereunder to take place through one of three designated service providers, none of which is affiliated with the securities industry. When the Program was instituted, an exception was made to these and other provisions of the Program relating to arbitration for claims of employees registered with the NASD or a stock exchange ("RRs") that were of a type that the RRs were required, under their U-4s, to arbitrate before the NASD or a stock exchange, pursuant to its rules. The Program provided that, as to these claims, the NASD and stock exchange rules regarding arbitration took precedence over the arbitration rules in the Program. The Program further provided, however, that at such time as RRs were no longer required to arbitrate their employment-related claims at the NASD or a stock exchange, they would become obligated to pursue those claims in accordance with arbitration provisions of the Program.
>
> Until recently, all employment-related claims of RRs were subject to mandatory arbitration under the NASD and stock exchange rules, and thus not subject to the arbitration provisions of the Program. The NASD rules have, however, recently been amended to eliminate the requirement that statutory discrimination claims of RRs be arbitrated at the NASD. . . . Effective when these rule changes take place . . . statutory discrimination claims of RRs will therefore be fully subject to all provisions of the Program, including the arbitration provisions.

Millard Declaration, Exhibit B (emphasis added). This further pronouncement regarding the

effect of CSFB's Program could not be more clear in its statement of the original and continued

intent that the Program would not affect the mandatory arbitration provisions of the NASD with

respect to employment-related claims, with the sole exception of statutory discrimination claims,

which after the NASD rule change were not subject to mandatory NASD arbitration. Since

Grunwald has not alleged any statutory discrimination claims, the Program, the NASD rules and

the Form U-4 executed by Grunwald all mandate NASD arbitration of his claims.

Finally, CSFB promulgated an Amended Employee Dispute Resolution Program,

which is effective as of February 4, 2002. Since Defendant Grunwald's employment was

terminated on June 28, 2001, the Amended Program is not applicable to him. However, the

Amended Program, like the Program that was in effect during the entire period of Grunwald's

1  employment, again states that registered representatives who are subject to mandatory arbitration

2  of their claims in the NASD are still subject to such mandatory arbitration. *See* Millard

3  Declaration ¶ 4, Exhibit C.

### III. ARGUMENT

5  The claims raised by Defendant Grunwald fall within the scope of claims subject

6  to mandatory arbitration pursuant to the NASD Code of Arbitration Procedure (the "NASD

7  Code"). Pursuant to the NASD Code and Defendant's Form U-4 Agreement with CSFB,

8  arbitration of the claims set forth in Defendant's AAA Demand for Arbitration must be heard by

9  the NASD. Not only does Rule 10201 of the NASD Code require that claims related to or arising

10  from Defendant's employment with CSFB be arbitrated by the NASD, but Rule 10100 provides

11  that it is "inconsistent with just and equitable principles of trade" for a person associated with a

12  member to fail to submit a claim to NASD arbitration. Furthermore, Rule 10100 also provides

13  that any action by a member requiring an associated person such as Grunwald to waive the

14  provisions of NASD arbitration is also "inconsistent with just and equitable principles of trade

15  and a violation of Rule 2110."

16  Grunwald's argument that, despite these provisions of the NASD Code, CSFB has

17  waived these provisions as a result of its own internal employment dispute resolution process is

18  specious. The Program, established by CSFB and applicable to its employees, has specifically

19  provided from its inception in December 1997 that claims of registered representatives subject to

20  mandatory NASD arbitration are still subject to mandatory arbitration in the NASD. The only

21  effect that the Program had on such claims is that it required an informal attempt at resolution

22  followed by a mediation before a neutral third party before such arbitration could commence.

23  Nothing in those rules was intended to or did alter or amend the provisions of Defendant's Form

24  U-4 or the NASD Code itself, requiring that arbitration of his employment claims be commenced

25  in the NASD. Defendant's argument to the contrary is based on a superficial reading of portions

26  of the Program applicable to non-registered employees, and completely ignores the express

27  statements in the Program that mandatory NASD arbitration with respect to the claims of

28  registered representatives is not affected by the arbitration provisions of the Program.

## IV. CONCLUSION

For the reasons stated above, CSFB has shown that it has a reasonable probability of success on the merits and that it will suffer irreparable harm if Defendant Grunwald is not enjoined from pursuing his claims before the AAA. Accordingly, CSFB respectfully requests that a preliminary injunction be issued to compel Defendant to stay further AAA proceedings.

Date: May 1, 2002

STEEFEL, LEVITT & WEISS
A Professional Corporation


By: _Michael S. Early_
    Michael D. Early
Attorneys for Plaintiff
CREDIT SUISSE FIRST BOSTON
CORPORATION

1  MICHAEL J. LAWSON (State Bar No. 66547)
   MICHAEL D. EARLY (State Bar No. 111459)
2  SUZY C. KASTER (State Bar No. 185912)
   STEEFEL, LEVITT & WEISS
3  A Professional Corporation
   One Embarcadero Center, 30th Floor
4  San Francisco, California  94111
   Telephone:    (415) 788-0900
5  Facsimile:    (415) 788-2019

6  Attorneys for Plaintiff
   CREDIT SUISSE FIRST BOSTON CORPORATION

7

8           UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11  CREDIT SUISSE FIRST BOSTON           CASE NO. C02-2051 SBA
    CORPORATION, a Massachusetts
12  corporation,                         **CREDIT SUISSE FIRST BOSTON
                                         CORPORATION'S REPLY MEMORANDUM OF
13              Plaintiff,               POINTS AND AUTHORITIES IN SUPPORT OF
                                         MOTION FOR PRELIMINARY INJUNCTION**
14       v.
                                         Date:  May 14, 2002
15  MICHAEL GRUNWALD, a California       Time:  1:00 p.m.
    resident,                            Dept:  The Honorable Sandra B. Armstrong
16
                Defendant.
17

18              I.   **INTRODUCTION**

19       Credit Suisse First Boston Corporation ("CSFB") stated in its Supplemental

20  Memorandum of Points and Authorities filed on May 1, 2002 in support of its motion for

21  preliminary injunction that the position of defendant Michael Grunwald ("Defendant" or

22  "Grunwald") that his employment-related claims were properly filed with the American

23  Arbitration Association ("AAA") "is at best ill advised and at worst made in bad faith."  (CSFB's

24  Supp. Memo., page 2.)  It now appears from Grunwald's opposition that his arguments are both

25  ill advised _and_ made in bad faith.  Through 20 pages of tortured reasoning, Grunwald attempts to

26  justify his AAA filing by a strained interpretation of CSFB's Employment Dispute Resolution

27  Program that can only be supported by ignoring common sense, rules of statutory construction

28  and all evidence which fails to support his position.

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION                          1
(No. C 02-2051 SBA)

1    Defendant's position can be summarized as follows: (1) the Court should not

2    enforce the clear intent of CSFB's Program, the Form U-4 and the NASD Rules; (2) despite the

3    clear intent of the Program to the contrary, the Court should find that it covers all employment-

4    related claims and precludes NASD or other stock exchange arbitration of any claims of any

5    registered representations.  These contentions are supported neither by fact nor by law.  CSFB has

6    clearly demonstrated the probability of success on the merits and irreparable injury.  Accordingly,

7    Defendant should be enjoined from proceeding to litigate his claims in the AAA.

8                                              II.  **FACTS**

9    The Court can cut through Grunwald's obfuscation by focusing on a point which

10   even Grunwald was forced to concede in his Opposition Memorandum:  "Grunwald concedes that

11   if the Employment Agreement did not exist, CSFB would have the right to compel arbitration

12   before the NASD pursuant to the Form U-4 and the NASD Rules."  (Grunwald's Opp. Memo.,

13   pg. 14, lines 4-6.)  Stripped of its rhetoric, which is designed solely to confuse and mislead the

14   Court, Grunwald's argument comes down to the simple proposition that there is something in his

15   CSFB offer letter (which he calls the "Employment Agreement") which compels a different

16   result.

17   In fact, nothing could be further from the truth.  Grunwald's offer letter makes it

18   very clear that he will "be subject to all other rules and policies of employment generally

19   applicable to employees of the Company at your level, including those summarized on the

20   'Principles of Employment for U.S. Employees' attached as Exhibit C."  (Grunwald Employment

21   Agreement, Ex. A to Decl. of Michael Grunwald, filed May 6, 2002, at pg. 7, ¶ 10(b).)  Exhibit C

22   to Grunwald's offer letter, entitled "Principles of Employment for U.S. Employees" states that

23   "all employees are subject to the Statement of Policy regarding the Credit Suisse First Boston

24   Employment Dispute Resolution Program," that "the foregoing Principles of Employment are

25   subject to amendment from time to time" and that "copies of the policies referred to" in Exhibit C

26   are "available from CSFB's Human Resources Department."

27   CSFB's Employment Dispute Resolution Program (the "Program") itself clearly

28   provides that the claims which Grunwald has brought in the AAA are, pursuant to the Program, to

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111
Telephone: 415/788-0900 · Facsimile: 415/788-2019

1    be brought in the NASD or other appropriate stock exchange forum as provided for in

2    Grunwald's Form U-4 agreement. This clear statement of the Program is set forth in the language

3    of the Statement of Policy instituting the Program itself, the questions and answers which

4    accompanied the introduction of the Program in December 1997 and the subsequent memoranda

5    in January 1999 commenting on the removal of certain types of claims from NASD arbitration. It

6    was reiterated as recently as February 4, 2002 in an amended statement of the Program. In none

7    of these documents is there the slightest indication, ambiguity or uncertainty regarding the forum

8    for the employment-related claims presented by Grunwald. That forum is the NASD or other

9    stock exchange forum, not the AAA or one of the other independent service providers set forth in

10    the Program. The Program expressly states that those independent service providers are not

11    applicable to the arbitration of employment related claims, with the exception of statutory

12    discrimination claims.

### III. ARGUMENT

#### A.    CSFB Has Not Waived the Provisions of Grunwald's Form U-4

15        CSFB's contention in this motion that arbitration of employment related disputes

16    must be conducted before the NASD is not an argument. It is a fact accepted by state and federal

17    courts. Cione, supra., 58 Cal. App. 4th at 631, fn. 3, citing Scher v. Equitable Life Insurance

18    Society of the United States, 866 F. Supp. 776, 777 (SDNY 1994). Grunwald's argument to the

19    contrary is without merit. Indeed, Grunwald has conceded that "if [his] Employment Agreement

20    did not exist, CSFB would have the right to compel arbitration before the NASD pursuant to the

21    Form U-4 and the NASD Rules." (Grunwald's Opp. Memo., p. 14, lines 4-6.) In light of this

22    admission, Defendant's rhetoric suggesting that the Form U-4 does not require arbitration in any

23    particular forum can be seen for what it is: rhetoric and nothing more.

24        Defendant's Form U-4 states that he applies "for registration with the jurisdictions

25    and SROs indicated in item 11... and, in consideration of the jurisdictions and SROs receiving

26    and considering my application, I submit to the authority of the jurisdictions and SROs and agree

27    to comply with all... rules and regulations of the jurisdictions and SROs...." (See Declaration of

28    Michael D. Early, filed April 26, 2002, Exhibit B, p. 4, ¶ 2.) The Form U-4 further provides that

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION                3
(No. C 02-2051 SBA)

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111
Telephone: 415/788-0900 · Facsimile: 415/788-2019

1    Grunwald agrees to "arbitrate any dispute, claim or controversy that may arise between me and

2    my firm, or a customer, or any other person, that is required to be arbitrated under the rules,

3    constitutions, or bylaws of the SROs indicated in item 11…." Id., at ¶ 5.

4        Indeed, Cione v. Forrester's Equity Services, Inc., 58 Cal. App. 4th 625 (1997),

5    cited by Defendant, does not support Defendant's position, and in fact directly refutes it.  In

6    Cione, supra, the Court of Appeal held that the Form U-4 clearly constituted an agreement by the

7    broker to arbitrate with the SROs contained in the Form U-4.  584 Cal. App. 4th at 635.

8    Furthermore, the fact that Grunwald registered with a number of different exchanges, not just the

9    NASD, does not eviscerate the effect of the Form U-4,  but merely makes each one of them an

10    appropriate forum for arbitration of the dispute.  As the Court stated in Cione: "The Form U-4 'is

11    not a contract with defendants but rather an application to qualify with various security

12    exchanges.  The U-4 is a separate contract, and as long as this contract is effective, the terms of

13    the agreement must be followed, regardless of the fate of a separate, though related,

14    [employment] agreement."  58 Cal. App. 4th at 637, quoting O'Donnell v. First Investors Corp.,

15    872 F. Supp. 1274, 1277 (SDNY 1995).

16        The Cione Court also noted that even where an employment agreement is

17    integrated, it does not affect the provision of the U-4 unless there is a "clear and unambiguous

18    agreement to waive or supercede the U-4."  58 Cal. App. 4th at 637, quoting O'Donnell, supra,

19    872 F. Supp. at 1277.  In rejecting the broker's argument that his employment agreement

20    eviscerated the requirement of his Form U-4 that he arbitrate before the NASD, the Court in

21    Cione noted "neither in its integration clause nor elsewhere did the written employment

22    agreement suggest it stated the parties' entire agreement as to all matters or that it otherwise

23    superceded Cione's prior written arbitration agreement with [the] NASD."  58 Cal. App. 4th at

24    638.

25        Grunwald's offer letter here in fact does not contain an integration clause.  It

26    merely states that "the terms of this offer may not be amended except in a writing signed by a

27    duly authorized officer of the Company."  See Declaration of Michael Grunwald, filed May 6,

28    2002 ("Grunwald Declaration"), Exhibit A, p. 8, ¶ 11.)  More importantly, Defendant's offer

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA  94111
Telephone: 415/788-0900 · Facsimile: 415/788-2019

1   letter in any event expressly incorporated the provisions of CSFB's Program, including those

2   explanatory memoranda which Defendant is so anxious that the Court should refuse to consider.

3           Grunwald's offer letter expressly incorporated CSFB's "rules and policies of

4   employment" and the "Principles of Employment for U.S. employees" which were outlined in

5   Exhibit C to Grunwald's employment agreement. (Id., ¶ 10.) Exhibit C to Grunwald's

6   employment agreement furthermore stated specifically that Grunwald will be subject to the

7   Statement of Policy regarding CSFB's Program, that "the foregoing principles of employment are

8   subject to amendment from time to time" and that "copies of the policies referred to above are

9   available from the Human Resource department." (Id., Exhibit C, p. C-1 and C-2.)

10          CSFB's Program expressly makes the Program itself and its arbitration provisions

11  subject to those claims which, pursuant to the Form U-4, require arbitration of claims by the

12  NASD or another stock exchange to be so arbitrated. Consistent with that clear statement of

13  intent, CSFB distributed a memorandum to all employees in January 1999 regarding the effect on

14  the Program of the NASD's exclusion of statutory discrimination claims from NASD arbitration.

15  Consistent with the initial statement of the Program in December 1997, the January 1999

16  memorandum confirmed that employment-related claims other than statutory discrimination

17  claims are still subject to NASD or stock exchange arbitration. (See Declaration of Elizabeth

18  Millard, filed May 1, 2002 ("Millard Declaration"), Exhibit B.)[1]

19  **B.     Proper Construction of Grunwald's Offer Letter and CSFB's Program Requires**
20         **Arbitration Pursuant to Grunwald's Form U-4**

21          As discussed above, Grunwald's offer letter does not in any way alter the

22  provisions of CSFB's Program. Similarly, the Program quite clearly contemplates and intends

23

[1]  Defendant's attempt to relegate the NASD and other stock exchanges to the status of a simple provider of
24   arbitration services at the option of the parties is a ludicrous attempt to ignore an entire statutory and
     regulatory scheme. The NASD, like other stock exchanges "is a self-regulated organization under Section
25   28(b) of the Securities Exchange Act of 1934 that regulates investment brokers and broker dealers. 15
     U.S.C. § 78Bb(b)." Wojcik v. Aetna Life Insurance and Annuity Company, 901 F. Supp. 1282, 1284, fn.1
26   (N.D. Ill. 1995), quoted in Cione, supra., 58 Cal. App. 4th at 630, fn. 1. The Form U-4 is used "to register
     securities dealers with different exchanges and associations, such as the NASD and the New York Stock
27   Exchange." Wojcik, supra., 901 F. Supp. at p. 1285, fn. 3., cited in Cione, supra., 58 Cal. App. 4th at 630,
     fn. 2.

28

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION          5
(No. C 02-2051 SBA)

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111
Telephone: 415/788-0900 · Facsimile: 415/788-2019

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER, 30TH FLOOR · SAN FRANCISCO, CA 94111
Telephone: 415/788-0900 · Facsimile: 415/788-2019

1  that employment-related claims such as Grunwald's be filed pursuant to the Form U-4s executed

2  by registered representatives such as Grunwald.  Grunwald's argument to the contrary based on

3  supposed rules of contract interpretation, in fact ignores those rules, misstates California law

4  regarding integrated contracts, and attempts to compel the Court to ignore the clear intent of the

5  Program.

6         First, Grunwald's employment agreement is not an integrated agreement.  The

7  statement in the offer letter that its terms cannot be altered except by a writing signed by an

8  officer of CSFB is not an integration clause.  Even if it were considered an integrated agreement

9  however, under California law, parole evidence could be used to not only demonstrate that an

10  ambiguity exists, but also to explain the true intent of the agreement.  Maffei v. Northern Ins. Co.

11  of New York, 12 F.3d 892 (9th Cir. 1993); Brinderson-Newberg Joint Venture v. Pacific Exectors,

12  Inc., 971 F.2d 272 (9th Cir. 1992), cert. den., 507 U.S. 914 (1993).

13         In this case, however, it does not matter whether or not Grunwald's employment

14  agreement is considered integrated or not, because the agreement itself expressly refers to and

15  incorporates CSFB's employment policies, including CSFB's Program, and specifically refers

16  Grunwald to the rules and policies governing his employment and to CSFB's Human Resources

17  Department for amendment and clarifications thereto.  It is quite simply ludicrous for Grunwald

18  to argue that the Court must disregard the very clear statement of the intent behind CSFB's

19  Program because the particular documents he finds so troublesome were not physically attached

20  to his offer letter.  They did not need to be, since the offer letter explicitly incorporated them by

21  reference.

22         The lengths to which Grunwald goes to ignore this fact are indicated by his

23  citation to a Ninth Circuit case discussing Oregon parole evidence law (Web v. National Union

24  Fire Insurance Company of Pittsburgh, 207 F.3d 579 (9th Cir. 2002), mistakenly cited in

25  Grunwald's Opposition as 207 F.2d) and his argument that memoranda circulated to all

26  employees describing CSFB's Program two years before Grunwald became employed, and never

27  rescinded or amended, are somehow not applicable to him.  The contention that the Court must

28  ignore clear, unambiguous statements of the intent and meaning of the provisions of the Program

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION          6
(No. C 02-2051 SBA)

1    simply because they were enunciated before Grunwald became an employee are baseless.

2    Nothing protects Grunwald from the plain, clear language of CSFB's Program.

3                    Second, Grunwald's reading of the employment agreement defies ordinary rules of

4    contract interpretation, since it effectively eliminates an entire provision of CSFB's Program.

5    Defendant's interpretation would make that paragraph describing the arbitration of employment-

6    related claims for registered representatives completely devoid of any meaning.[2]  If Defendant

7    were correct that no claims are legally required to be arbitrated before the NASD or any other

8    exchange, then in effect, CSFB did nothing by including a provision that such claims be arbitrated

9    pursuant to the rules of the NASD or of another stock exchange.  CSFB's supplemental

10   memorandum in January 1999 would also have no meaning or effect.  Indeed, according to

11   Defendant's interpretation, <u>all</u> employment claims, whether they are statutory discrimination

12   claims or not, were always subject to CSFB's Program, regardless of any changes in the rules of

13   the NASD or another stock exchange regarding the arbitrability of such claims.  In short,

14   defendant's reading of the Program would make a mockery of its language and intent, and

15   eviscerate an entire section of the agreement.

16                   Indeed, Grunwald's arguments defy every applicable rule of contract

17   interpretation.  It is well established in California, as well as in other jurisdictions, that "the whole

18   of a contract is to be taken together, so as to give effect to every part, if reasonably practicable,

19   each clause helping to interpret the other."  Cal. Civ. Code § 1641.  <u>National City Police Officers</u>

20   <u>Assn. vs. City of National City</u>, 87 Cal.App.4th 1274 (2001) (court gives effect to every provision

21   of a contract if possible).  Furthermore, several contracts relating to the same matters between the

22   same parties and made as part of substantially one transaction are to be read together.  Cal. Civ.

23   Code § 1642; <u>Berg Metals Corp. vs. Wilson</u>, 170 Cal.App.2d 559 (1959) (related documents,

24   though not executed contemporaneously, will be construed as one agreement).  Grunwald's

25   acceptance of CSFB's offer letter incorporating the CSFB Program and its exclusion of NASD or

---

[2]      The provision referred to is on page 2 of the Program and sets forth the requirement for arbitration of claims brought by registered representatives who are subject to NASD or other stock exchange arbitration rules.  *See* Millard Declaration, Exhibit A.

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION          7
(No. C 02-2051 SBA)

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111
Telephone: 415/788-0900 · Facsimile: 415/788-2019

1    other stock exchange mandated arbitration, and Grunwald's subsequent execution of a Form U-4

2    acknowledging the jurisdiction and applicability of the rules of the NASD and other stock

3    exchanges, including the requirement of arbitration of employment-related claims, are related

4    documents which are part of a single transaction.

5            Finally, Defendant's effort to attach a highly technical and clearly unintended

6    meaning to the words "legal requirement" in CSFB's Program, violates the well-established

7    principle that words of a contract are to be understood in their ordinary and popular sense. Cal.

8    Civ. Code § 1644. <u>County of Orange vs. Santa Margarita Water District</u>, 44 Cal.App.4[th] 189

9    (1996) (words in contract are to be understood in their usual and ordinary sense unless used by

10    the parties in some technical sense); <u>Moss Development Co. vs. Geary</u>, 41 Cal.App.3d 1 (1974)

11    (words used in contract to be given their ordinary meaning unless there is evidence parties

12    intended to use them in a unique sense or to give them some different meaning).  Here, all of the

13    evidence--the language of the Program itself as well as subsequent statements regarding

14    application of the Program--indicate that the term "legal requirement" did not mean that the

15    parties would have to be violating a state or federal law in order for NASD or other stock

16    exchange arbitration to be applicable.  Grunwald's argument that this is in fact the precise

17    meaning of these terms is an exercise in sophistry, and should not be countenanced by this Court.

## IV. <u>CONCLUSION</u>

19            CSFB has demonstrated not only a probability but a certainty of success on the

20    merits as well as irreparable injury, which Defendant does not even dispute.  It is absolutely clear

21    that under CSFB's Program, Grunwald's Form U-4 and the NASD rules, Grunwald has

22

23

24

25

26

27

28

STEEFEL, LEVITT & WEISS
A PROFESSIONAL CORPORATION
ONE EMBARCADERO CENTER · 30TH FLOOR · SAN FRANCISCO, CA 94111
Telephone: 415/788-0900 · Facsimile: 415/788-2019

1   improperly brought his claims before the AAA.  CSFB's motion for preliminary injunction

2   should be granted, and defendant Grunwald should be enjoined from proceeding with the AAA

3   arbitration.

4

5   Date: May 9, 2002                STEEFEL, LEVITT & WEISS
                                     A Professional Corporation
6

7

8   By: Michael Early /sck
                                     Michael D. Early
9                                    Attorneys for Plaintiff
                                     CREDIT SUISSE FIRST BOSTON
10                                   CORPORATION

    15621:6301199.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION          9
(No. C 02-2051 SBA)

## PROOF OF SERVICE

I, Dawne M. Camilleri, declare as follows:

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years, and not a party to the within cause; my business address is STEEFEL, LEVITT & WEISS, One Embarcadero Center, 30th Floor, San Francisco, California 94111. On May 9, 2002, I served the within:

CREDIT SUISSE FIRST BOSTON CORPORATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

on the interested parties in this action addressed as follows:

> Michael Blumenfeld, Esq.
> Freeman Freeman & Smiley
> Penthouse, Suite 1200
> 3415 Sepulveda Blvd.
> Los Angeles, CA  90034-6060
> (310) 255-6202

[X]  **(BY FACSIMILE)** By placing such document for collection and transmission at Steefel, Levitt & Weiss, San Francisco, California, to the facsimile numbers listed above. I am readily familiar with the practice of Steefel, Levitt & Weiss for collection and processing of facsimiles, said practice being that in the ordinary course of business, facsimiles are transmitted immediately after being placed for processing.

[X]  **(BY OVERNIGHT MAIL)** By placing such envelope, for collection and mailing at Steefel, Levitt & Weiss, San Francisco, California following ordinary business practice. I am readily familiar with the practice of Steefel, Levitt & Weiss for collection and processing of overnight service mailings, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service FEDERAL EXPRESS for delivery as addressed.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 9, 2002, at San Francisco, California.

_Dawne M. Camilleri_
Dawne M. Camilleri

PROOF OF SERVICE
(No. C 02-2051 SBA)

1